# Exhibit 2

BLANK ROME LLP
Dennis M.P. Ehling (SBN 168892)
Ehling@BlankRome.com
1925 Century Park East, 19th Floor
Los Angeles, CA  90067
Telephone:     424.239.3400
Facsimile:     424.239.3434

BLANK ROME LLP
Victor M. Wigman, Esq.
Brian Wm. Higgins, Esq.
600 New Hampshire Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 772-5800

Attorneys for Plaintiff
PACING TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACING TECHNOLOGIES, LLC,<br><br>                    Plaintiff,<br><br>     vs.<br><br>GARMIN INTERNATIONAL, INC. AND GARMIN USA, INC.<br><br>                    Defendant. | Case No. CV 12-1067 BEN (WMC)<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Jury Trial Demanded |

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Pacing Technologies LLC (hereinafter "Plaintiff"), files this First Amended Complaint ("FAC") against Garmin International, Inc. and Garmin USA, Inc. (hereinafter collectively "Garmin," or "Defendants"), and, in support thereof, further states and alleges as follows:

**THE PARTIES**

1. Plaintiff, Pacing Technologies LLC, is a Delaware limited liability company, having a place of business located at 3425 University Avenue #1177, San Diego, California 92104.

2. Upon information and belief, Defendant Garmin International, Inc. is a Kansas corporation, having a place of business located at 1200 East 151st Street, Olathe, Kansas 66062.

3. Upon information and belief, Defendant Garmin USA, Inc. is a Kansas corporation, having a place of business located at 1200 East 151st Street, Olathe, Kansas 66062.

4. According to Garmin's published literature, Garmin, Ltd., a Swiss corporation having its principal place of business located at Mühlentalstrasse 2, 8200 Schaffhausen, Switzerland, is the parent corporation of Garmin International, Inc., and Garmin USA, Inc., and owns, directly or indirectly, those operating companies.

5. Garmin International, Inc., and Garmin USA, Inc., provide marketing support for the sale of Garmin products, and conduct the majority of product design and development work for Garmin products. Garmin's U.S. consumer product sales are handled through its network of dealers and distributors who are serviced by a staff of regional sales managers and in-house sales associates at those operating companies.

**JURISDICTION AND VENUE**

6. This is a civil action for infringement under the laws of the United States, Title 35 United States Code §§ 1, *et seq*.

7. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent-exclusive jurisdiction).

8. Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants, as noted above, have conducted and do conduct business within the Southern District of California. For example, Defendants use product dealers and distributors in the U.S. to advertise, promote, market, offer to sell, and sell products and services, including Best Buy, Costco, Target, and Wal-Mart, which are located in this judicial district. One or more Defendants import or cause to be imported infringing products into the United States, including into this judicial district.

1  Defendants make available, advertise, and promote a web service called Garmin Connect available
2  via the Internet to residents of this judicial district.
3       9.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as Defendants are
4  subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

**A.     Inventor**

10.    Inventor William D. Turner is the CEO and founder of Plaintiff, Pacing Technologies LLC, a company that develops and provides software applications ("apps") and web services enabling mobile devices using patented proprietary technology.

**B.     U.S. Patent No. 8,101,843**

11.    On January 24, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,101,843 ("the '843 Patent"), entitled "System and Method for Pacing Repetitive Motion Activities."  Mr. Turner is named as the sole inventor on the patent.  A true and correct copy of the '843 Patent is attached hereto as Exhibit A.  As indicated on the front of the '843 Patent, the '843 Patent is based on U.S. Patent Application Serial No. 12/916,869.  That application is a continuation of and claims the benefit of U.S. Patent Application Serial No. 11/244,241, filed Oct. 6, 2005, now U.S. Pat. No. 7,825,319.

12.    Plaintiff, Pacing Technologies LLC, is the owner by assignment of the '843 Patent.

13.    The claims of the '843 Patent relate to, *inter alia*, a system and method that facilitate a user using a web service to pre-select and designate activities and a target pace or tempo used in repetitive motion activities such as, but not limited to, running, walking, swimming, cycling, aerobics, and the like, store such information, and transfer activity- or pace/tempo-related information between the web service and a portable, GPS-enabled device that displays some of that information to the user.

**C.     Patented Article**

14.    In July 2011, Plaintiff, Pacing Technologies LLC, launched its PaceDJ app for the iPhone, which is designed to help runners, walkers and cyclists synchronize their pace with the

tempo of songs. Since before the filing of this lawsuit, the PaceDJ app has been configured such that, during use of the app, the app displays "US Patents 7,825,319 and 8,101,843," thereby giving notice to the public that the app and Plaintiff's other intellectual property is covered by one or more of those patents. Since before the filing of this lawsuit, the PaceDJ app has been configured to provide a link to the PaceDJ website (http://www.pacedj.com), the link being accessible via the app. Since before the filing of this lawsuit, the PaceDJ website has included the language "US Patents 7,825,319 and 8,101,843," thereby associating the PaceDJ app with the '843 Patent, and giving further notice to the public that the app is covered by the '843 Patent.

## COUNT I

### Direct Infringement of the '843 Patent

15. Plaintiff incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

16. According to Garmin's own published literature, Garmin is a "worldwide provider of navigation, communication and information devices and applications, most of which are enabled by Global Positioning System ("GPS") technology. Garmin designs, develops, manufactures and markets a diverse family of hand-held, portable and fixed-mount GPS-enabled products and other navigation, communications and information products for the automotive/mobile, outdoor, fitness, marine, and general aviation markets."

17. According to Garmin's published literature, Garmin (Asia) Corporation, a subsidiary of Garmin, Ltd., is responsible for manufacturing some or all of the products identified below. Upon information and belief, Garmin International, Inc., is the importer of record for Garmin's products, including those made by the Garmin (Asia) Corporation. Upon information and belief, Garmin International, Inc., is the only Garmin entity or operating company identified on U.S. Customs and Border Protection's list of U.S. importers.

18. Upon information and belief, Defendants' business is predicated in part on their making, using, selling, offering for sale, and/or importing into the United States a variety of products and services covered by the '843 Patent including, but not limited to, portable, GPS-enabled devices

3

called "FR", "Forerunner," "Swim," and "Edge", a web service called Garmin Connect, and a smart phone app called Garmin Fit. Those actions—making, using, selling, offering for sale, and importing—are performed by one or more of the Defendants in this judicial district and across the United States.

19. As stated in Garmin's published literature, the FR/Forerunner products are "Compact, lightweight training assistants for athletes with integrated GPS sensor (except for the FR60 and FR 70 fitness watches) that provide time, speed, distance, pace and other data. Some models also offer a heart rate monitoring function. The FR 60 and FR70 are entry-level advanced fitness watches that allow runners and walkers to track their workouts and automatically upload their data (via a wireless USB ANT™ Stick) to a personal computer. The Forerunner 405 is a compact-sized, wrist-worn GPS-enabled device that allows runners and joggers to track their speed, distance, heart rate and location, access their training history or challenge a Virtual Partner™ and automatically upload their data wirelessly to a personal computer. The Forerunner 405CX adds heart rate based calorie computation and improved comfort to the numerous features available on the Forerunner 405. The Forerunner 410 offers an enhanced touch bezel designed to allow users to quickly scroll and select features on the run. The Forerunner 610 is Garmin's first ever touch-screen fitness watch and it also adds the new Virtual Racer™, which allows runners to race against their previous best times, using data stored on the watch. The Forerunner 310XT model, which was designed specifically for triathletes, is water-resistant to 50m and tracks biking and running data (and optional heart rate data). In October 2011, Garmin announced the Forerunner 910XT, which is the only all-in-one GPS-enabled device that provides detailed swim metrics and tracks distance, speed/pace, elevation and heart rate for running and cycling. Designed for both open water and pool swimming, Forerunner 910XT is water resistant to 50 meters and is Garmin's first multisport watch to offer extensive swim metrics, including swim distance, stroke identification, stroke count and pool lengths."

20. As also stated in Garmin's published literature, the Edge products are "Integrated personal training systems designed for cyclists. The Edge 200 measures speed, distance, time, calories burned, climb and descent, altitude and more. The Edge 500 is geared toward performance-driven cyclists and tracks the cyclist's distance, speed, location and elevation with high sensitivity

1 GPS, and also tracks the cyclist's heart rate with an optional heart rate monitor (sold separately). The newest model, the Edge 800, added a touchscreen interface to the Edge family of products."

21. As also stated in Garmin's published literature, its new Garmin Swim device is the company's "first training watch designed specifically for swimmers that lets users track stroke type, stroke count, distance, pace, lengths and much more. This stylish thin watch also allows swimmers to track their workouts and drills in real-time." "Upon completion of a workout, swimmers can upload their swim data to Garmin Connect™ (http://connect.garmin.com), a website for free online analysis. Here swimmers can quickly and easily view their workouts, track their totals, set goals, share workouts and data with coaches, friends and family and participate in an online fitness community of more than 80 million activities around the world. Through the magic of ANT+™ wireless technology and the USB stick that comes with the Garmin Swim, swimmers' workout data automatically transfers to their computer when in range."

22. As also stated in Garmin's published literature, "In October 2011, Garmin announced Garmin Fit for iPhone and Android, Garmin's first fitness app that lets users track metrics such as speed, pace, distance, time, calories, and with optional Garmin accessories displays heart rate and cadence. Garmin Fit also maps and automatically uploads workouts to Garmin's Garmin Connect, which is Garmin's website where users can track their workout data."

23. As also stated in Garmin's published literature "As of January 23, 2011, Garmin's worldwide IP portfolio includes over 600 patents and 400 trademark registrations. Garmin was selected as a constituent of the 2011/2012 Ocean Tomo® 300 Patent Index which recognizes companies with high intellectual property value. We believe that our continued success depends on the intellectual skills of our employees and their ability to continue to innovate. Garmin will continue to file and prosecute patent applications when appropriate to attempt to protect Garmin's rights in its proprietary technologies."

24. As also stated in Garmin's published literature, "We rely on a combination of patents, copyrights, trademarks and trade secrets, confidentiality provisions and licensing arrangements to establish and protect our proprietary rights. To this end, we hold rights to a number of patents and

1 registered trademarks and regularly file applications to attempt to protect our rights in new
2 technology and trademarks."
3      25.     Upon information and belief, since before the filing of this lawsuit, Defendants have
4 had actual and/or constructive knowledge of the '843 Patent at least through due diligence performed
5 by Defendants in the course of their above-mentioned regular and continued filing and prosecuting
6 of patent applications including, but not limited to, Defendants' patent searches, and prior art
7 searches related to, *inter alia*, fitness products.
8      26.     Upon information and belief, since before the filing of this lawsuit, Defendants have
9 had knowledge of the PaceDJ app, and thus had actual and/or constructive knowledge of the '843
10 Patent, at least through Defendants' active participation in the research, development, marketing, and
11 sale of, *inter alia*, fitness products, particularly Garmin Fit, which competes with the PaceDJ app, as
12 both Garmin Fit and the PaceDJ app are smart phone fitness apps that allow users to maintain a
13 desired pace while engaged in repetitive motion activities such as walking, running, and cycling, and
14 are both sold through similar channels, e.g., the Internet (on websites such as iTunes$^{TM}$).
15      27.     Upon information and belief, Defendants have, under 35 U.S.C. § 271(a), by way of
16 the above-mentioned actions in this judicial district, directly infringed, and will continue to directly
17 infringe, the '843 Patent, by, *inter alia*, making, using, selling, offering for sale, and/or importing
18 into the United States the above-mentioned products and web services covered by the '843 Patent in
19 this judicial district and elsewhere in the United States.
20      28.     As a direct and proximate result of Defendants' acts of infringing the '843 Patent,
21 Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, in no
22 event less than a reasonable royalty to compensate for Defendants' infringement.
23      29.     As mentioned above, Plaintiff launched its PaceDJ app for the iPhone, which is
24 designed to help runners, walkers and cyclists synchronize their pace with the tempo of songs.  Since
25 before the filing of this lawsuit, the PaceDJ app has been configured such that, during use of the app,
26 the app displays "US Patents 7,825,319 and 8,101,843," thereby giving notice to the public that the
27 app and Plaintiff's other intellectual property is covered by those patents.  Since before the filing of
28 this lawsuit, the PaceDJ app has been configured to provide a link to the PaceDJ website

1  (http://www.pacedj.com), the link being accessible via the app. Since before the filing of this
2  lawsuit, the PaceDJ website has included the language "US Patents 7,825,319 and 8,101,843,"
3  thereby associating the PaceDJ app with one or more other those patents, and giving further notice to
4  the public that the app and Plaintiff's other intellectual property is covered by those patents. A
5  reasonable inference to draw from those facts, taken as true, is that Defendants were aware of
6  Plaintiff's competing PaceDJ app, were aware of the PaceDJ website, and thus had at least
7  constructive knowledge of the '843 Patent before the filing of this lawsuit because the patent number
8  was identified on the website.

9      30.    Therefore, Defendants have knowingly, willfully, and deliberately infringed the '843
10  Patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning
11  of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

12      31.    Upon information and belief, Defendants will continue to directly infringe the '843
13  Patent, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants'
14  activities, specifically the acts of making, using, selling, offering for sale, and importing as
15  mentioned above.

16      32.    Upon information and belief, the direct infringement of the '843 Patent by
17  Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff
18  would have made or would enjoy in the future; has injured Plaintiff in other respects; and will cause
19  Plaintiff added injury and damage unless Defendants are enjoined from infringing the '843 Patent on
20  all products and web services Defendants will make, use, offer for sale, sell, import, distribute,
21  market, or advertise until the expiration of the '843 Patent.

22
23  **COUNT II**
24  **Indirect Infringement of the '843 Patent**

25      33.    Plaintiff incorporates the allegations set forth in the paragraphs above as though fully
26  set forth herein.

27      34.    Upon information and belief, Defendants have, under 35 U.S.C. § 271(b), indirectly
28  infringed, and continue to indirectly infringe the '843 Patent by, *inter alia*, inducing others to make,

use, sell, offer for sale, and/or import into the United States the above-mentioned products and web services covered by the '843 Patent, and distributing, marketing, and/or advertising those products and web services covered by the '843 Patent in this judicial district and elsewhere in the United States.

35. Upon information and belief, Defendants have had knowledge of the '843 Patent since before the filing of this lawsuit, at least for the reasons set forth in the paragraphs above. Defendants have had knowledge of the '843 Patent at least since May 4, 2012, when Defendants were served with Plaintiffs' initial Complaint (ECF 1). Despite having such knowledge of the '843 Patent, Defendants have continued to make their products and web services available to their customers.

36. Defendants' customers directly infringe the '843 Patent by, for example, placing every element of the claimed systems into use, having control over those systems when used, and directly benefiting from the use of those systems. For example, Defendants' customers directly infringe the '843 Patent by: (1) using the Garmin Connect website to create and/or edit workout information, the workout information including pacing information related to an activity selected by the customer, such as walking, running, or cycling; and (2) using the Garmin-supplied communications devices, such as the USB ANT Stick or USB cable, and one or more of the above-mentioned Garmin products to transfer the workout information from the Garmin Connect website to one of those devices, such as a Garmin Forerunner, Swim, and/or Edge device, such that the workout information is stored on the device and used for pacing and other purposes.

37. Upon information and belief, Defendants are also aware that they provide their customers with products and web services that are used in a manner that knowingly infringes the '843 Patent, and encourage those customers to use those products and web services. For example, Defendants knowingly provide their customers with, *inter alia*: access to the Garmin Connect website, which allows users to create and edit workout information, including pacing information; personal GPS devices, such as the Garmin Forerunner, Swim, and Edge devices, which store workout information, output workout information to users, and measure users' performance during workouts; communications devices and related software, such as the Garmin USB ANT Stick and

8

1 ANT Agent, which facilitate the transfer of workout information between the Garmin Connect
2 website and said personal GPS devices; and accessories, such as the Garmin Foot Pod and
3 Speed/Cadence Bike Sensor, which connect with said personal GPS devices to further measure
4 users' performance, including users' cadence (e.g., steps and strokes), during workouts.

38. Upon information and belief, Defendants know that their customers are using Defendants' products and web services in an infringing manner because, for example, Defendants are fulfilling an ongoing demand for cadence sensing accessories, such as the Garmin Foot Pod and Speed/Cadence Bike Sensor, which connect with personal GPS devices to provide users with real-time cadence information during workouts. Moreover, many of Defendants' personal GPS devices are bundled with such cadence sensing accessories for sale, and Defendants' latest products, including the Forerunner 910XT and the Garmin Swim, include built-in cadence-type sensing features. Defendants are also aware that their customers are using Defendants' products and web services in an infringing manner because of the numerous questions and comments posted on Defendants' website by customers discussing the use of pacing features included with Defendants' products and web services (https://forums.garmin.com).

39. Upon information and belief, Defendants specifically encourage and instruct their customers to use Defendants' products and web services in a manner that Defendants know infringes the '843 Patent. For example, Defendants provide instructions for customers on how to create custom workouts using the Garmin Connect website, and how to transfer custom workout information, including pacing information, from the Garmin Connect website to a personal GPS device using the Garmin USB ANT Stick (for Forerunner devices) or a USB cable (For Edge devices). Defendants provide such instructions via quick start manuals, which are packaged with Defendants' products, as well as via Defendants' website, which provides detailed owner's manuals (https://support.garmin.com/support/manuals/searchManuals.htm), answers to frequently asked questions (http://connect.garmin.com/help/faq), and tutorial videos (http://www8.garmin.com/learningcenter). Thus, Defendants have and are promoting and advertising infringing uses of the '843 Patent, and its customers are engaging in those infringing uses.

1  40. Accordingly, Defendants have and are actively and knowingly aiding and abetting their customer's direct infringement of the '843 Patent. As a direct and proximate result of Defendants' acts of inducing infringement of the '843 Patent, Plaintiff has suffered injury and monetary damages for which Plaintiff is entitled to relief, in no event less than a reasonable royalty to compensate for Defendants' infringement.

41. Upon information and belief, Defendants have knowingly, willfully, and deliberately induced infringement of the '843 Patent in conscious disregard of Plaintiff's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

42. Upon information and belief, Defendants will continue to induce infringement of the '843 Patent, causing immediate and irreparable harm unless this Court enjoins and restrains Defendants' activities, specifically the acts of making, using, selling, offering for sale, and importing as mentioned above.

43. Upon information and belief, the induced infringement of the '843 Patent by Defendants has, and will, deprive Plaintiff of royalties and other related revenue which Plaintiff would have made or would enjoy in the future; has injured Plaintiff in other respects; and will cause Plaintiff added injury and damage unless Defendants are enjoined from inducing infringement of the '843 Patent on all products and web services Defendants will make, use, offer for sale, sell, import, distribute, market, or advertise until the expiration of the '843 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Pacing Technologies LLC, respectfully requests this Court to:

A. Enter judgment for Plaintiff that the '843 Patent was duly and legally issued, is valid, enforceable, and has been infringed, directly or indirectly, by Defendants;

B. Enter judgment for Plaintiff that Defendants have willfully infringed, and are willfully infringing, one or more claims of the '843 Patent;

C. Order Defendants to account in written form for and to pay to Plaintiff actual damages to compensate Plaintiff for Defendants' infringement of the '843 Patent through and

1 including the date of entry of the judgment on the jury's verdict, including but not limited to,
2 damages of no less than a reasonable royalty, together with interest and costs under 35 U.S.C. §284,
3 and further order that such damages be trebled due to Defendants' deliberate, willful, and knowing
4 conduct;

5       D.      Issue a preliminary injunction restraining the Defendants, their directors, officers,
6 agents, employees, successors, subsidiaries, assigns, affiliates and all persons acting in privity or in
7 concert or participation with any of them from the continued infringement, direct or contributory, or
8 active inducement of infringement by others, of the '843 Patent;

9       E.      Issue a permanent injunction restraining the Defendants, their directors, officers,
10 agents, employees, successors, subsidiaries, assigns, affiliates and all persons acting in privity or in
11 concert or participation with any of them from the continued infringement, direct or contributory, or
12 active inducement of infringement by others, of the '843 Patent;

13       F.      Direct Defendants to file with this Court, and to serve on Plaintiff, a written report
14 under oath setting forth in detail the manner and form in which Defendants have complied with the
15 injunction;

16       G.      In lieu of a permanent injunction, order the Defendants to pay to Plaintiff monetary
17 damages that will be suffered as a result of Defendants' continuing post-verdict infringement of the
18 '843 Patent by requiring the Defendants to take a compulsory license at a reasonable royalty rate to
19 be determined by the Court on all products that Defendants make, use, offer for sale, sell, import,
20 distribute, market, or advertise that infringe the '843 Patent until the expiration of the '843 Patent,
21 which royalty payments shall commence three months after entry of the judgment and shall be made
22 quarterly thereafter, and shall be accompanied by an accounting of the sales of infringing products
23 by the Defendants;

24       H.      Order such other measures in the form of audit rights, interest on late payments, and
25 appropriate security to protect Plaintiff's rights;

26       I.      Order Defendants to pay Plaintiff its costs, expenses, and fees, including reasonable
27 attorneys' fees pursuant to 35 U.S.C. § 285, and pre-judgment and post-judgment interest at the
28 maximum rate allowed by law; and

1     J.    Grant Plaintiff such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that the issues in this case be tried by a jury.

Dated: July 26, 2012                      Respectfully submitted,

*/s/ Dennis M.P. Ehling*
Dennis M.P. Ehling, Esq.
BLANK ROME LLP
1925 Century Park East, Ste. 1900
Los Angeles, CA 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3480
E-mail: ehling@blankrome.com

**ATTORNEY FOR PLAINTIFF
PACING TECHNOLOGIES LLC**

**OF-COUNSEL FOR PLAINTIFF
PACING TECHNOLOGIES LLC:**
Victor M. Wigman, Esq.
Brian Wm. Higgins, Esq.
BLANK ROME LLP
Watergate
600 New Hampshire Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 772-5800
Facsimile:   (202) 772-5858
E-mail:  Wigman@blankrome.com
E-mail:  Higgins@blankrome.com